Guild Ventures, LLC v Kenwood Commons, LLC
2026 NY Slip Op 03854
June 18, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

Guild Ventures, LLC, Respondent,
v
Kenwood Commons, LLC, et al., Defendants, and Jacob Frydman et al., Appellants.

Decided and Entered:June 18, 2026
CV-25-0047
Calendar Date: April 28, 2026
Before: Garry, P.J., Clark, Fisher And Ryba, JJ.

Law Office of Joseph Indusi, PLLC, Hauppauge (Joseph L. Indusi of counsel), for appellants.
Blank Rome LLP, Chicago, Illinois (William J. Dorsey of counsel), for respondent.

[*1]
Garry, P.J.
Appeals from a decision and an order of the Supreme Court (Thomas Marcelle, J.), entered December 3, 2024 and December 20, 2024 in Albany County, which, among other things, granted plaintiff's motion for a deficiency judgment.
This commercial foreclosure action concerns a 75.51-acre property located in the City of Albany, well known as the former location of the Kenwood Convent and the Doane Stuart School. By 2009, the property was vacant and the owners listed it for sale for $9 million. The asking price was later reduced to $3.9 million, and in 2017 the property was sold to nonparty 451 Southern Boulevard, LLC for $3 million. That same day, Southern Boulevard transferred the property to defendant Kenwood Commons, LLC for a reported $18 million in cash — an increase in value allegedly attributable to certain zoning changes that occurred during the pendency of the prior sale. Kenwood Commons then borrowed $5 million from TBG Funding, LLC for development of the property. A promissory note for that sum was executed and secured by both a mortgage on the property, held by TBG, and the personal guarantee of defendant Jacob Frydman — managing member of Kenwood Commons — and defendants Jacob Frydman 2000 Irrevocable Trust and Monica Libin 2000 Irrevocable Trust. After unsuccessfully attempting to sell the property as the loan approached its maturity date, Kenwood Commons defaulted on the note in late 2018.
In 2019, TBG commenced this action, and it subsequently assigned the loan and its rights to this litigation to plaintiff. A judgment of foreclosure and sale was issued, and Kenwood Commons filed for bankruptcy soon thereafter. Plaintiff was the sole bidder at the ensuing public auction on March 21, 2023, purchasing the property for $100,000.FN1 A referee later issued a report of sale calculating the net deficiency following the sale to be $18,047,632.34. Plaintiff moved to confirm the report and direct entry of the deficiency judgment, arguing that the fair market value of the property on the date of the foreclosure sale was $2.55 million and that it was thus entitled to a judgment in the amount of $15,497,632.34, plus interest. The guarantors opposed and proffered that the fair market value of the property was $71.5 million, based upon certain as-of-right zoning and the property's income potential. Supreme Court ordered an evidentiary hearing, at which the two experts and Frydman offered testimony. Thereafter, the court issued a decision and an order essentially accepting the valuation proffered by plaintiff. The guarantors appeal.FN2
"[W]hen a lender makes a motion for a deficiency judgment, 'the court . . . shall determine, upon affidavit or otherwise as it shall direct, the fair and reasonable market value of the mortgaged premises as of the date such premises were bid in at auction or such nearest earlier date as there shall have been any market value thereof and shall make an order directing the entry of a deficiency judgment' " (Flushing Sav. Bank[*2], FSB v Bitar, 25 NY3d 307, 313 [2015] [emphasis omitted], quoting RPAPL 1371 [2]; accord First Commerce, LLC v Jerath, 229 AD3d 926, 928-929 [3d Dept 2024]). Fair market value means "the amount which one desiring but not compelled to purchase will pay under ordinary conditions to a seller who desires but is not compelled to sell" (936 Second Ave. L.P. v Second Corporate Dev. Co., Inc., 10 NY3d 628, 632 [2008] [internal quotation marks and citation omitted]). It does not mean "panic value, auction value, speculative value, [or] a value fixed by depressed or inflated prices" (Rhinebeck Bank v WA 319 Main, LLC, 210 AD3d 918, 920 [2d Dept 2022] [internal quotation marks and citation omitted]). The lender moving for a deficiency judgment "bears the initial burden of demonstrating, prima facie, the property's fair market value" (Flushing Sav. Bank, FSB v Bitar, 25 NY3d at 312; see U.S. Bank, N.A. v 199-02 Linden Blvd. Realty, LLC, 197 AD3d 1208, 1210 [2d Dept 2021]). If a prima facie case is established, the opponent bears the burden of persuading the court that the highest and best use of the property warrants a different valuation (see Gulf Coast Bank & Trust Co. v Virgil Resort Funding Group, Inc., 201 AD3d 1086, 1089 n 3 [3d Dept 2022], lvs denied 38 NY3d 909 [2022], 38 NY3d 909 [2022]; BTC Mtge. Invs. Trust 1997-SI v Altamont Farms, 284 AD2d 849, 850 [3d Dept 2001]). Ultimately, Supreme Court enjoys broad discretion to review the evidence and "arrive at a determination of value that is either within the range of expert testimony or supported by other evidence and adequately explained by the court" (ARC Machining & Plating v Dimmick, 238 AD2d 849, 850 [3d Dept 1997]; see Stone Mtn. Prime LLC v UICC Holding LLC, 122 AD3d 1114, 1115 [3d Dept 2014], lv denied 24 NY3d 917 [2015]).
To meet its initial burden, plaintiff submitted an appraisal prepared by a certified and licensed appraiser who employed a sales comparison approach to value the subject property as vacant land, utilizing 30 other comparably-sized properties within a 30-mile radius that had sold in recent years, excluding agricultural sales. In arriving at his valuation, plaintiff's appraiser considered the property's physical characteristics, including that a significant portion of the acreage was constrained by wetlands and steep slopes, as well as the condition of the existing improvements as of the date of March 21, 2023, which the proof established had been vacant for years and were in a deteriorated and/or substantially gutted state. Although the appraiser concluded that the property's highest and best use as vacant land was future mixed-use development, he accounted for the absence of operative development approvals or permits at the relevant time, the substantial costs that would be required to rehabilitate or redevelop the premises and prevailing market conditions affecting large-scale development projects in opining that such potential did not translate to an elevated present market [*3]value. Plaintiff's proof also included the property's market history, as a recent sale of the subject property between a seller under no compulsion to sell and a buyer under no compulsion to buy is often the best evidence of value (see Matter of Allied Corp. v Town of Camillus, 80 NY2d 351, 356 [1992]). That history included that the property remained unsold for an extended period despite substantial reductions in the asking price and an ultimate sale price of $3 million in 2017. Plaintiff's appraiser also established that rising financing, construction and carrying costs had materially diminished the economic feasibility of such projects since the 2017 transaction, thereby supporting plaintiff's position that the property's market value had not appreciated notwithstanding the passage of time. As recognized by the appraiser, the property was also transferred for $18 million in 2017. However, the arm's-length-nature of that "flip," as termed by Frydman, was called into question by evidence that Southern Boulevard was represented in that transaction by Frydman's stepson, and the property failed to sell in 2018 and remained vacant and non-income-producing thereafter. For similar reasons, there was no basis to afford controlling weight to the property's 2018 municipal tax assessment. In view of the foregoing, Supreme Court permissibly concluded that plaintiff had established, prima facie, that the property's fair market value as of the date of the foreclosure sale was $2.55 million, or $50,000 per usable acre (see Flushing Sav. Bank, FSB v Bitar, 25 NY3d at 312).
The burden thus shifted to the guarantors to demonstrate that the property's highest and best use warranted some greater valuation (see Stone Mtn. Prime LLC v UICC Holding LLC, 122 AD3d at 1115). A certified and licensed appraiser also testified on behalf of the guarantors, agreeing that the highest and best use of the property was a large-scale mixed-use residential development but employing a combination of valuation approaches. For comparable sales, the guarantors' appraiser relied upon market pricing both in the Capital Region and outside of the state. As for income capitalization, the appraiser's analysis was heavily dependent upon a number of extraordinary assumptions concerning the near-term realization of the proposed redevelopment. Although there was indeed proof concerning prior zoning approvals, development plans and the property's theoretical capacity to support extensive residential, hotel and commercial construction, as Supreme Court found, such projections regarding financing, entitlements, market demand, construction feasibility and future absorption rates had not yet materialized as of the date of the foreclosure sale (see Matter of City of New York [Broadway Cary Corp.], 34 NY2d 535, 536 [1974]; Matter of Consolidated Edison Co. of N.Y. v Neptune Assoc., 190 AD2d 669, 670 [2d Dept 1993]; National Bank of N. Am. v Systems Home Improvement, 69 AD2d 557, 563 [2d Dept 1979], affd[*4]50 NY2d 814 [1980]). Contrary to the guarantors' argument on appeal, the court was under no obligation to accept the proposition that such purported redevelopment potential compelled a valuation many times greater than any prior arm's-length sale reflected in the record, particularly where the foreclosure sale drew only one bidder and the property had remained undeveloped for years, notwithstanding the asserted existence of such lucrative development opportunities. Importantly, the record does not support the guarantors' claim that the court erroneously viewed itself as constrained to adopt one expert's valuation wholesale. Having assessed the competing appraisals, and with emphasis placed upon its firsthand observation of the witnesses at the hearing, the court found plaintiff's expert more credible and his underlying analysis more persuasive. The fact that another factfinder may have reasonably arrived at a somewhat higher valuation does not render the court's determination an improvident exercise of discretion, and it therefore will not be disturbed (see ARC Machining & Plating v Dimmick, 238 AD2d at 850).
We are likewise unpersuaded that Supreme Court erred in confirming the referee's report of sale based upon plaintiff's alleged failure to satisfy outstanding real property taxes — in the sum of approximately $6.5 million — prior to delivery of the deed. The terms of sale, read in conjunction with RPAPL 1354 (2) (see generally St. Denis v Blakesley, 70 AD3d 1078, 1079-1080 [3d Dept 2010]), contemplated that outstanding tax obligations would be addressed from the proceeds of the foreclosure sale according to their statutory priority. Here, however, the delinquent taxes substantially exceeded the amount bid at auction, rendering full satisfaction of the tax liens from the sale proceeds impossible. Under these circumstances, the court permissibly rejected the contention that plaintiff's inability to extinguish the outstanding tax liabilities prior to delivery of the deed constituted a material breach invalidating the sale (see generally NJCC-NYS Community Restoration Fund, LLC v Ruiz, 228 AD3d 769, 770 [2d Dept 2024]).
The guarantors' remaining contentions, to the extent not expressly addressed herein, have been examined and determined to be without merit.
Clark, Fisher and Ryba, JJ., concur.
ORDERED that the appeal from the decision is dismissed.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1
Two days after the sale, the property was devastated by a fire, the cause of which remains undetermined.

Footnote 2
The guarantors' appeal from Supreme Court's decision, a nonappealable paper, must be dismissed (see CPLR 5512 [a]).